**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **Gillis Joel Angeron III,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CV NO.:** |
| | ) | |
| **V.** | ) | |
| | ) | |
| **Magnolia River Restaurant, LLC** | ) | **JURY TRIAL DEMANDED** |
| **d/b/a Jesse's Restaurant and Fort** | ) | |
| **Morgan Restaurant Group, LLC,** | ) | |
| **d/b/a Jesse's Restaurant, On The** | ) | |
| **Bay & Jesse's On The Bay,** | | |
| | | |
| **DEFENDANTS.** | | |

## COMPLAINT

### I.     JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(3), 216(b), and 217 and 28 U.S.C. § 1331.  The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

### II.    PARTIES

2.     Gillis Joel Angeron III (hereinafter "Plaintiff") is a resident of Robertsdale, Baldwin County, Alabama, and performed work for the Defendant in

1

the counties composing the Southern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Southern District, Southern Division.

3.    Defendant Magnolia River Restaurant LLC d/b/a Jesse's Restaurant and Fort Morgan Restaurant Group, LLC d/b/a Jesse's Restaurant, On The Bay & Jesse's On The Bay, (collectively hereinafter "Defendants"), are companies registered and doing business in the State of Alabama. Therefore, this Court has personal jurisdiction over Defendants. Defendants are engaged in commerce from the production of goods and services as contemplated by 29 U.S.C. §§ 203(r), 203(s).

## III.    STATEMENT OF FACTS

4.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5.    For purposes of this Complaint, Defendants are an integrated enterprise.

6.    Defendants represent themselves to the public to be an integrated business.[1]

---

[1] *See* Defendant's Landing Page for both registered enterprises, prompting customers to choose between Jesse's On The Bay or Jesse's Restaurant: https://jessesrestaurant.com/ (last accessed March 13, 2026).

7. Defendants are owned and operated by Stephen Coltharp and Angela Coltharp.

8. Defendants' finances are managed by Missy Pearson with C. Denise Woods & Company, PLLC.

9. Defendants provide virtually identical services to each other at different locations.[2]

10. Defendants share virtually identical operating policies, practices, and procedures (including but not limited to hours of operation, daily shift meetings, opening and closing protocols, payroll and tax withholding practices).

11. Defendants' employees can work at either location as needed by Defendants or desired by their employees.

12. Defendant Magnolia River Restaurant hired Plaintiff on or about April 5, 2023.

13. During the time period relevant to this Complaint, Plaintiff worked at both locations and was subjected to virtually identical violations of the FLSA, as described herein.

---

[2] *See* Jesse's On The Bay: "As the restaurant to the beloved Jesse's in Magnolia Springs, this coastal retreat delivers the same dedication to premium ingredients, expertly crafted dishes, and genuine Southern hospitality—now enhanced by a stunning bayfront setting that's as unforgettable as the meal itself." (https://jessesrestaurant.com/on-the-bay/).

14.    Throughout his employment, Defendants employed Plaintiff as a Server.

15.    During February 2025, Defendants implemented a new policy regarding payroll taxes.

16.    Prior to the implementation of Defendants' new payroll tax policy, Defendants "tracked uncollected taxes and deducted them from future paychecks."

17.    As part of their new payroll tax policy, Defendants made the decision to deduct each employee's payroll taxes for the prior month from their credit card tips.

18.    When Defendants announced their new payroll tax policy, it communicated that the policy would go into effect immediately.

19.    After Defendants announced their new payroll tax policy, Plaintiff contacted the Department of Labor to determine if Defendants could legally withhold tipped-wages to cover payroll taxes.

20.    The Department of Labor directed Plaintiff to contact the Internal Revenue Service to determine to what extent Defendants could withhold tipped wages to cover payroll taxes and/or implement a new policy regarding payroll taxes.

21.    After speaking with the Department of Labor, Plaintiff contacted the Internal Revenue Service.

22. When Plaintiff spoke with the Internal Revenue Service, it informed him that Defendants was unable to unilaterally implement a new policy regarding payroll taxes without providing sufficient notice before making the change (i.e. the decision to immediately begin implementing the new payroll tax policy was improper).

23. During Plaintiff's conversation with the Internal Revenue Service, it questioned whether Defendants required employees to clock in under a different job code when they were performing non-tipped labor, such as pre- or post-shift cleaning or unrelated work.

24. Defendants did not require Plaintiff or their other Servers to clock in under a different job code when they performed non-tipped labor, such as pre- or post-shift cleaning or unrelated work.

25. During Plaintiff's conversation with the Internal Revenue Service, it questioned whether Defendants required employees to make any notations in time-records (such as clocking out and back in) to indicate that they were performing non-tipped labor, such as pre- or post-shift cleaning or unrelated work.

26. Defendants did not require their Servers to notate in any way in their time-keeping records that they had performed non-tipped labor, such as pre- or post-shift cleaning or unrelated work.

27.     The Internal Revenue Service notified Plaintiff that Defendants were likely in violation of the Department of Labor's 80/20 rule, which regulates when an employer is required to provide employees when an hourly rate beyond the $2.13 tip credit.

28.     The Internal Revenue Service explained to Plaintiff that if Defendants was in violation of the Department of Labor's 80/20 rule, Defendants could owe all Servers substantial backpay.

29.     The Internal Revenue Service explained to Plaintiff that if Defendants were required to pay their Servers for non-tipped labor at an hourly rate beyond the $2.13 tip credit, then his end of year tax liability would change, and Defendants would likely not need to withhold tipped wages to cover payroll taxes.

30.     Throughout Plaintiff's employment, Defendants typically maintained two shifts for Servers: Lunch Shift and Dinner Shift.

31.     Throughout Plaintiff's employment, Defendants' hours of operation for each restaurant location were as follows:

|  | **Lunch** | | **Dinner** | |
|---|---|---|---|---|
|  | *Open* | *Close* | *Open* | *Close* |
| Sunday | Closed | Closed | Closed | Closed |
| Monday | 11:00 a.m. | 2:30 p.m. | 4:30 p.m. | 9:00 p.m. |
| Tuesday | 11:00 a.m. | 2:30 p.m. | 4:30 p.m. | 9:00 p.m. |
| Wednesday | 11:00 a.m. | 2:30 p.m. | 4:30 p.m. | 9:00 p.m. |
| Thursday | 11:00 a.m. | 2:30 p.m. | 4:30 p.m. | 9:00 p.m. |
| Friday | 11:00 a.m. | 2:30 p.m. | 4:30 p.m. | 10:00 p.m. |
| Saturday | 11:00 a.m. | 2:30 p.m. | 4:30 p.m. | 10:00 p.m. |

32.    Throughout Plaintiff's employment, Defendants typically required all Servers to report to their scheduled shift approximately one hour before the restaurant opened to the public (i.e. 10:00 a.m. for lunch and 3:30 p.m. for dinner).

33.    Throughout Plaintiff's employment, Servers typically spent their first scheduled hour performing assigned non-tipped tasks (including but not limited to: cutting fruit, preparing homemade condiments, batch preparing drinks for the restaurant, stocking various portions of the restaurant, setting tables, or accepting/storing deliveries), before the restaurant opened for the shift.

34.    Throughout Plaintiff's employment, Defendants typically held a thirty (30)-minute meeting with their Servers as the restaurant was opening (i.e. meetings beginning at 11:00 a.m. and 4:30 p.m.).

35.    While Defendants' Servers attended their daily shift meeting, their Bartenders performed nearly all tipped labor.

36.    Throughout Plaintiff's employment, Defendants forbade employees from beginning their closing non-tipped tasks (including, but not limited to, cleaning the restaurant, cleaning the kitchen, cleaning the server aisle, polishing and organizing silverware, folding napkins, washing dishes, washing pots and pans, emptying trash, and disassembling service stations) until the very last guest had left the restaurant and the doors had been locked.

37.   Defendants scheduled an average of five (5) Servers per shift.

38.   Defendants assigned Servers, including Plaintiff, in a rotation to ensure they had a fair opportunity to generate revenue from tipped income.

39.   Due to their post-shift cleaning policies and scheduling practices, Defendants' Servers, including Plaintiff, generally waited an extended period of time, ranging from thirty (30) minutes to two (2) hours, following their last tip-generating labor before Defendants allowed them to begin their closing non-tipped labor and leave work.

40.   Due to their post-shift cleaning policies, Defendants' Servers, including Plaintiff, typically remained onsite for an additional hour or two after Restaurant's customers closed (i.e. leaving around 3:30 p.m. for lunch and between 10:00 p.m.-11:00 p.m. Monday through Thursday or 11:00 p.m.-12:00 a.m. Friday and Saturday).

41.   As a result of Defendants' cleaning and scheduling practices, their Servers typically worked five and a half (5.5) hours on lunch shifts.

42.   As a result of Defendants' cleaning and scheduling practices, their Servers typically worked six and a half (6.5) or seven and a half (7.5) hours on dinner weeknight shifts.

8

43. As a result of Defendants' cleaning and scheduling practices, their Servers typically worked seven and a half (7.5) or eight and a half (8.5) hours on dinner weekend shifts.

44. Throughout his employment, Defendants typically required their Servers, including Plaintiff, to perform non-tippable labor in excess of 20% of their working time.

45. Defendants employs or employed Clayton (LNU) as Front of House Manager.

46. Defendants is partially owned by Angie Coltharp.

47. On February 22, 2025, Clayton (LNU) and Angie Coltharp held another meeting and discussed Defendants' new payroll tax policy.

48. During the February 22, 2025 meeting, Plaintiff notified Defendants that he had spoken with the Internal Revenue Service regarding Defendants' new payroll tax policy.

49. During the February 22, 2025 meeting, Plaintiff explained that "when asking the IRS about the [payroll] tax [policy], the IRS told us . . . that [Defendants' Servers were] owed back wages from [Defendants, which] it turns out [was] like considerable amounts of back wages due to the 80/20 rule."

50. During the February 22, 2025 meeting, Plaintiff communicated that he intended to initiate a legal claim to recover "theft of wages" under the "80/20" rule.

51.    During the February 22, 2025 meeting, Plaintiff communicated that Defendants' improper pay practices had affected "every employee."

52.    After Plaintiff indicated that he intended to initiate a legal claim regarding Defendants' improper pay practices, Clayton (LNU) responded "okay, we're good here, you can go," and Coltharp agreed.

53.    When Plaintiff sought clarification on what Clayton (LNU)'s comment meant, Clayton (LNU) responded "there's the door; we will see you in court."

54.    Plaintiff reminded Clayton (LNU) that he was supposed to work that night.

55.    Clayton (LNU) told Plaintiff that he would no longer work his scheduled shift and that he could "leave now."

56.    Defendants terminated Plaintiff's employment on February 22, 2025.

57.    When Defendants terminated Plaintiff's employment, their other Servers were present.

58.    After Defendants terminated Plaintiff's employment, it abandoned their new payroll tax policy.

## IV.    COUNT ONE - FLSA UNPAID WAGES (DUAL JOB)

59.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-58 above

60. During the three years preceding the filing of this Complaint, Defendant Magnolia River Restaurant, LLC, has been an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. § 203(s)(1).

61. During the three years preceding the filing of this Complaint, Defendant Fort Morgan Restaurant Group, LLC, has been an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. § 203(s)(1).

62. During the three years preceding the filing of this Complaint, Defendant Magnolia River Restaurant, LLC, has been a company wherein two or more employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce and/or used the instrumentalities of interstate commerce.

63. During the three years preceding the filing of this Complaint, Defendant Fort Morgan Restaurant Group, LLC, has been a company wherein two or more employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce and/or used the instrumentalities of interstate commerce.

64. Defendant Magnolia River Restaurant, LLC's gross annual volume of revenue on a rolling quarterly basis for the quarters ending in June 2023, September 2023, December 2023, March 2024, June 2024, September 2024, December 2024, and March 2025 exceeds $500,000.

11

65.     Defendant Fort Morgan Restaurant Group, LLC's gross annual volume of revenue on a rolling quarterly basis for the quarters ending in June 2023, September 2023, December 2023, March 2024, June 2024, September 2024, December 2024, and March 2025 exceeds $500,000.

66.     At all times relevant to this action, Defendant Magnolia River Restaurant, LLC was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

67.     At all times relevant to this action, Defendant Fort Morgan Restaurant Group, LLC was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

68.     During the three years preceding the filing of this Complaint, Plaintiff and all other similarly situated Servers were considered "tipped employees" of both Defendants as defined by 29 U.S.C. § 203(t)(1).

69.     Throughout Plaintiff's employment, Defendants required their Servers, including Plaintiff, to perform unrelated and non-tippable labor for extended periods of time, such that they were acting in a "dual job" capacity pursuant to 29 C.F.R. § 531.56(e).[3]

---

[3] *See Rafferty v. Denny's Inc*, (finding that when an employee spends more than 20% of their working time performing non-tipped labor, they are in effect employed in a dual rule); *see also White v. Hard Rock Café Int'l.*, 2025 U.S. Dist. LEXIS 186311 (N.D. GA 2025)(explaining the effect of revocation of the DOL's 2021 Final Rule does not supersede the precedent established by *Rafferty,* which reached its opinion absent a *Chevron* Deference).

70.    Throughout Plaintiff's employment, Defendants claimed a "tip credit" for all hours worked by Servers, including Plaintiff, after they completed their initial training, including extended periods of unrelated and non-tippable labor.

71.    Defendants' actions in claiming a "tip credit" for non-tippable and unrelated labor violated the FLSA.

72.    As a result of Defendants' violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## V.    COUNT TWO - FLSA RETALIATION (TERMINATION)

73.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-72 above.

74.    During February 2025, Defendants implemented a new policy regarding payroll taxes.

75.    During February 2025, Plaintiff spoke with the Internal Revenue Service regarding Defendants' new payroll taxes, who notified him that Defendants was likely in violation of the Tipped Credit requirements of the Fair Labor Standards Act, including the 80/20 rule.

76.    On February 22, 2025, Plaintiff notified Defendants that he intended to initiate a legal claim against it due to their violations of the Tipped Credit requirements of the Fair Labor Standards Act, including the 80/20 rule.

77.    After Plaintiff notified Defendants that he intended to initiate a legal claim under the Fair Labor Standards Act, Defendants immediately terminated his employment.

78.    Defendants terminated Plaintiff's employment in the presence of their other employees.

79.    Defendants' actions in terminating Plaintiff violated the FLSA.

80.    Because of Defendants' willful and intentional violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## VI.    COUNT THREE – FLSA OPT-IN COLLECTIVE ACTION

81.    Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-58 above.

82.    Plaintiff brings this suit as an opt-in collective action pursuant to the FLSA 16(b).

83.    Plaintiff's Opt-In Consent Form is attached as Exhibit A.

84.    For the three years preceding the filing of this complaint, Defendants employed approximately fifty (50) individuals who were subjected to similar policy and practice violations of the FLSA as that of Plaintiff.

85.    The potential class is comprised of any and all Servers employed by Defendants at any time during the three (3) years preceding the filing of this

Complaint that were paid a tip credit but performed a substantial amount of non-tippable labor during a single shift.

86.    Upon information and belief, the practices alleged in this Complaint comprise violations of the FLSA against other employees, thereby presenting both questions of law and fact common to the prospective class.

87.    Upon information and belief, the claims of the representative Plaintiff are typical of claims of the prospective class.  Defendants subjected Plaintiff and other members of the prospective class to the same unlawful application of the tip credit for non-tippable labor.

88.    Upon information and belief, Plaintiff will fairly and adequately protect the interests of the class in that he shares common interests with the other members of the class and has employed counsel who will vigorously prosecute the interests of the prospective class.

89.    Upon information and belief, the questions of law and fact common to the members of the prospective class predominate over any questions affecting only individual members, as the same practice of applying a tip credit for non-tippable labor.

90.    Upon information and belief, this collective action is superior to other available methods to the fair and efficient adjudication of the controversy because of the large number of potential plaintiffs; because of the relatively moderate

amount of damages available to potential plaintiffs were they to commence an individual action; and, because of the predominate factual and legal questions common to all prospective class members.

## VII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.    The Court issue proper process to compel Defendants to answer or otherwise plead to the allegations contained in the Complaint;

B.    This Court award Plaintiff the amount of his unpaid overtime pay, unpaid overtime premium, unpaid minimum wages, liquidated damages equal to the amount of all unpaid wages; nominal damages; and special damages;

C.    This Court award Plaintiff the amount of his backpay, plus an additional equal amount as liquidated damages; front pay; compensatory damages (including emotional distress damages); nominal damages; and special damages;

D.    That Plaintiff be granted judgment against Defendants for all reasonable attorneys' fees, costs, disbursements and interest; and

E.    For such other and further relief as this Court deems equitable, proper and just.

_____
Allen D. Arnold
ada@allenarnoldlaw.com

_____
Whitney Morgan Brown
whitney@allenarnoldlaw.com

**OF COUNSEL:**
ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: (205) 252-1550


**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**


_____
OF COUNSEL

**DEFENDANTS' ADDRESS:**
Magnolia River Restaurant, LLC d/b/a Jesse's Restaurant
c/o Stephen Coltharp
12653 County Road 1
Fairhope, AL 36532

Fort Morgan Restaurant Group, LLC d/b/a/ Jesse's On The Bay
C/o Stephen Coltharp
12653 County Road 1
Fairhope, AL 36532

17